UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 04-563-C**

**THOMAS MITCHELL,** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**LARRY CHANDLER, ET AL.,** **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the defendants' motion for summary judgment based upon qualified immunity (DE 113), and several other motions by the parties (DE 114, 125, 129, 130, 133, 134).

**I. Factual Background**

The plaintiff, Thomas Mitchell, who is unrepresented by counsel, brought this action pursuant to 42 U.S.C. § 1983, alleging a violation of his First Amendment rights. He claims that the defendants, Warden Larry Chandler, Unit Director Aaron Smith, and Classification Officer Terry Bell, transferred him from his medically prescribed, single, "wet" cell at the Kentucky State Reformatory ("KSR") in retaliation for his filing lawsuits on behalf of himself and other inmates at KSR.

The plaintiff was incarcerated at the Green River Correctional Complex ("GRCC") in November 2001, when his bladder stopped functioning and he was medically ordered to use a catheter. The plaintiff is positive for the hepatitis-C virus, and the GRCC medical department was concerned that it could be transmitted to others by unsanitary and unsterile catheterization methods. The

GRCC medical department requested a medical transfer, and on November 27, 2001, Mitchell was transferred to KSR's hospital. He was discharged by a doctor to a single room with a door on December 6, 2001, due to the need to catheterize himself frequently. After Mitchell was sometimes placed in a "dry" cell, a prescription on July 7, 2002, directed that the plaintiff be placed in a "wet" cell (one with a commode). In 2002, Mitchell filed § 1983 actions in federal court and a civil rights action in state court. Defendant Chandler was the new warden of KSR in December 2003, and he reviewed Mitchell's allegations regarding the previous warden, Mugavin. A committee, consisting of Smith and Bell, met with the plaintiff on December 16, 2003, and recommended that he be transferred from KSR to GRCC. Smith and Bell completed a transfer authorization form on December 29, 2003. Mugavin, then deputy warden, approved the transfer on December 30, 2003. A separate medical determination was made by Nurse Haffner on January 22, 2004, that the plaintiff was qualified for transfer, and the next day he was transferred back to GRCC.[1]

The retaliation claim against the defendants in their individual capacities still remains, having survived both the initial review pursuant to 28 U.S.C. § 1915(A) and a summary-judgment motion. The court found that genuine issues of material

---

[1] The court previously outlined an extensive factual background as taken from "the plaintiff's verified complaint and its attachments, his pretrial memorandum, affidavits in the record, and the defendants' memorandum for summary judgment and its attachments." DE 50, at 2 n.2. Thus, the court addressed only the facts necessary to decide the currently pending motions.

fact existed and that the defendants were not entitled to a judgment as a matter of law on the plaintiff's retaliation claim (DE 50). The defendants now move for summary judgment on the basis of qualified immunity.

**II. Plaintiff's Motion for a Pretrial Judicial Ruling**

The plaintiff moves for the court "to make a pretrial judicial ruling whether plaintiff presented a valid claim within the original complaint that he was denied adequate access to the courts vis-a-vis the retaliatory transfer." DE 129. The plaintiff argues that the transfer was not only done to remove him from his single, wet cell, but also to stop him from adequately pursuing his legal activities.

Mitchell claims that the defendants' alleged retaliatory actions had an adverse effect on his actual ability to access the courts. He specifically states that the transfer denied him access to his witnesses, including the staff and other inmates at KSR. The transfer also caused him to lose his legal papers, because they were either lost or stolen.[2] Mitchell argues that he is not trying to assert a direct claim for denial of access to the courts, but that he alleged in his complaint as part of his retaliation claim that an adverse consequence of the transfer to GRCC was that his access to the courts was impeded. The court finds that the plaintiff's complaint does not allege denial of access to the courts as an adverse action in his retaliation claim.

---

[2] The plaintiff previously moved for leave to supplement and amend his complaint, stating that his legal papers were lost or stolen by KSR staff during his transfer, and the court denied his motion. DE 38.

3

The plaintiff in his complaint stated that the adverse-action element of his retaliation claim was the defendants' alleged act of transferring him away from his medically prescribed, single, wet cell at KSR to a non-medical facility that was unable to handle his serious medical needs. DE 1, at 19. The plaintiff's legal activities referenced in the complaint constitute his constitutionally protected activity, which he was arguably deterred from conducting by the defendants' alleged adverse, retaliatory actions. The plaintiff may not amend his complaint at this stage of the litigation. As the court has stated previously, the plaintiff may always file a new complaint after exhausting each claim through the administrative grievance process. *See* DE 38, 70. Additionally, amendment is not allowed if the claim is futile, and the plaintiff has not stated an actionable claim that he has been denied access to the courts.

The plaintiff has failed to allege any specific actions that impede or hinder his ability to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996). Inmates have a right to the tools they "need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* With respect to witnesses, the plaintiff has the ability to subpoena them for trial and conduct other necessary discovery. Legal papers, as far as they are filings in the record, may be requested from the court and thus replaced. The plaintiff has not

4

stated specific allegations of not being able to file a pleading or a lawsuit; thus, he was not stopped from exercising his right to access the courts.

To the extent that the plaintiff argues that his conduct on behalf of other inmates was protected, or that the defendants' actions adversely affected those rights, the court has previously determined that Mitchell was not engaged in protected conduct when he assisted the other inmates. DE 50, at 15-17. Mitchell does not generally have a constitutionally protected right of access to the courts on behalf of other inmates at the prison. "[A]n inmate does not have an independent right to help other prisoners with their legal claims." *Thaddeus-X*, 175 F.3d at 395 (citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993)). Thus, the plaintiff's arguments that he was unable to continue representing the mentally ill inmates at KSR after his transfer from that prison are unavailing.

The plaintiff's motion for a "pre-trial conference to settle dispute between parties concerning claims within complaint" (DE 133) is construed by the court as a motion for a hearing on the plaintiff's motion for a pretrial judicial ruling. The court having denied the plaintiff's underlying motion, the motion for a hearing will also be denied.

The plaintiff additionally states that the medical staff, including Nurse Haffner and Dr. Haas, improperly overrode the medical instructions from his prior doctors. Specifically, the plaintiff argues that Nurse Haffner overrode prior medical instructions when she found that the plaintiff could be transferred. These

allegations are not claims at issue in this lawsuit. Those medical personnel are not defendants in this action and whether they violated the plaintiff's constitutional rights is not something this court will address. The plaintiff additionally appears to allege in his response to the defendants' qualified-immunity motion that the defendants failed to care for his serious medical needs. DE 115, at 7-8. Again, this claim was not alleged in the plaintiff's complaint and the court will not address it.

## III. Defendants' Qualified Immunity Motion

The defendants move the court for summary judgment on the basis of qualified immunity. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-movant's case. *Id*. at 324-25. To survive summary judgment, the non-movant must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-movant must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. P. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The defendants in their individual capacities argue that they are entitled to qualified immunity on the plaintiff's § 1983 claims. The doctrine of qualified immunity states that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a court rules upon the qualified-immunity issue, it must first determine whether the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court finds that a constitutional violation could properly be made out from the parties' submissions, the next step is to ask whether the right was clearly established at the time the officer acted. *Id.*

### A. Whether There was a Constitutional Violation

The court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "In a retaliation claim . . . the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right." *Id.* (emphasis in original).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* The defendants argue that the plaintiff has failed to raise a genuine issue as to whether a constitutional violation occurred. The court already addressed this fully in its order on September 27, 2006, denying summary judgment for the defendants. The court, in that order, concluded that the plaintiff was engaged in protected conduct in his Oldham Circuit Court case, *Froman et al. v. Taylor et al.*, and in his Western District of Kentucky action, *Mitchell v. Mugavin et al.*; that the plaintiff's transfer away from his single, wet cell was an actionable adverse action of constitutional consequence; and that the defendants arguably made the transfer because of the plaintiff's protected conduct. *See* DE 50. Recognizing the court's previous rulings on the retaliation claim, the defendants move the court to reconsider its prior findings.

### Reconsideration of Summary Judgment Order

The defendants request as an alternative argument that the court reconsider its prior findings, but do not state whether they move for reconsideration under Federal Rule of Civil Procedure 59(e) or Rule 60(b). However, under either rule the motion is not timely. Rule 59 (e), which is used to analyze motions to reconsider, *see Tritent Int'l Corp. v. Kentucky,* 395 F. Supp. 2d 521, 522 (E.D. Ky. 2005),

8

requires that a motion to alter or amend a judgment be filed no later than ten days after entry of the judgment. A motion for relief from a final judgment under Rule 60(b) must be made within a reasonable time, which is no later than a year after the entry of the order when the movants argue mistake by the court or newly discovered evidence.[3] Fed. R. Civ. P. 60(c)(1). The court's order at issue was signed on September 27, 2006, and the defendants' motion was filed on October 31, 2007. Thus, the motion is untimely under either standard and the court will deny the motion. Nevertheless, the court notes that the factual disputes identified in its order still exist despite the defendants' new evidence and that the arguments raised by the defendants in their current motion are nearly identical to the arguments addressed in the court's previous order.

Thus, the court has previously established that genuine issues exist as to whether a constitutional violation occurred.

### B. Whether the Right was Clearly Established

The defendants may be shielded from liability for the alleged constitutional violations if their actions did not violate clearly established constitutional rights. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202

---

[3] The plaintiff argues in his surreply that the attachments to the defendants' qualified-immunity motion lack credibility and should be excluded. Whether the defendants' affiants and witnesses are credible is a determination for the fact-finders at trial, and the court will not address that issue further at this time.

9

(2001). Thus, the unlawfulness of the official actions must be apparent in the light of pre-existing law. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The defendants must have had "fair warning" that their conduct deprived the plaintiff of a constitutional right; otherwise they are entitled to qualified immunity. *Id.* at 739-40 (citing *United States v. Lanier*, 520 U.S. 259 (1997)). "The ultimate burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992) (citing *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). The right must have been so clearly established that the defendants would have understood that they should refrain from the unconstitutional conduct. *Id.* However, "[d]efendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority." *Id.*

The plaintiff claims that the defendants violated his right not to be retaliated against when they transferred him from his medically prescribed, single, wet cell with a door for privacy after the plaintiff exercised his right to access the courts. A retaliation claim does not have to involve an actual denial of access to the courts; instead, it can be brought where a plaintiff is penalized for exercising his right to access the courts. *Thaddeus-X*, 175 F.3d at 394. The law was clear at the time of the alleged constitutional violation that it was unlawful to punish an inmate for exercising his constitutionally protected right to access the courts. *Id.* at 391.[4]

---

[4] The court used the definition from *Thaddeus-X* to analyze whether the plaintiff had provided evidence to support all the elements of a retaliation claim. DE

Such punishment, or "adverse action," was defined as something "that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Id.* at 396 (emphasizing "that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment").

The question thus becomes whether a transfer away from a medically prescribed, single, wet cell, is a consequence that would generally cause someone to stop exercising their constitutionally protected rights. There is a genuine issue of material fact regarding the deterrent effect of the alleged adverse action. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("Whether a retaliatory action is sufficiently sever to deter a person of ordinary firmness from exercising his or her rights is a question of fact."). However, the facts as alleged by the plaintiff support a conclusion that the defendants' retaliatory actions would deter an ordinary person from exercising their rights, and thus the defendants were on notice that such behavior would violate the plaintiff's rights.

---

50; *see supra*. The court found that the defendants' alleged action in this case – transferring Mitchell from KSR's special medical unit of a single, wet, cell with a door for privacy, back to GRCC's non-medical two-man cell with no privacy – could constitute an adverse action according to the existing case law prohibiting retaliation. *Thaddeus-X*, 175 F.3d at 393 ("[T]he harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right." (emphasis in original)). The plaintiff alleges, and the court found a genuine dispute on the issue, that the defendants transferred him in retaliation for accessing the courts.

11

The defendants argue that they could have reasonably believed that their conduct did not violate Mitchell's constitutional rights under the circumstances. In *Thaddeus-X* the court found that defendant X would likely be deterred from exercising his right to access the courts by the actions taken against him, including "harrassment, physical threats, and transfer to the area of the prison used to house mentally disturbed inmates, especially combined with the conditions allegedly present there." *Id.* at 398. Likewise, in *Bushway v. Bureau of Prisons*, a transfer pursuant to a general transfer instead of a medical transfer was found to likely have a strong deterrent effect. No. 97-5282, 1999 WL 1021584, at *3 (6th Cir. Nov. 2, 1999). Thus, the defendants were on notice that a transfer to a less desirable location, specifically with respect to proper medical treatment, could constitute an adverse action.

The defendants further argue that they "could have reasonably believed that the transfer was legal in view of the legitimate penological interests they believed it would serve." DE 124, at 4 (citing *Saucier*, 533 U.S. at 205). "[P]rison officials should be accorded substantial deference in the adoption and implementation of policies and practices that in 'their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Brown v. Johnson*, 743 F.2d 408, 410 (6th Cir. 1984) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)). However, a genuine factual dispute exists as to whether the plaintiff was transferred for legitimate, non-punitive reasons, and whether the transfer would

have been made in absence of the plaintiff's protected conduct, and the court declines to decide these issues as a matter of law.

Additionally, the defendants argue that the established law at the time was that inmates did not have a constitutional right to remain at a specific facility or to prevent a transfer to another facility. *Ward v. Dyke*, 58 F.3d 271, 275 (6th Cir. 1995). The right at issue in this action, though, is not the plaintiff's right to remain at a particular facility, but his right to be free from retaliation for exercising his constitutionally protected right to petition the courts.

The defendants state that medical staff must approve an inmate as being medically qualified for a transfer before an inmate can be transferred to another institution. This requirement for approval is based on KDOC's policies and procedures. The defendants did not possess the authority to transfer an inmate without approval by the medical staff. Thus, the defendants argue that they could have reasonably believed that the medical staff would stop the transfer if it would adversely effect Mitchell's health. The court previously concluded as follows:

> It is true that a classification branch manager also approved the transfer, and a nurse concluded that the plaintiff was in "fair health" and thus "qualified for transfer." The defendants, however, by directing and recommending the transfer, set the transfer into motion. *See Siggers-El*, 412 F.3d at 701 ("[T]he Defendant filled out the screen knowing the effect it would have – that it would lead inexorably to the plaintiff's transfer, which is exactly what occurred.").

DE 50, at 26. The defendants are not shielded from liability by the action or inaction of others. The question at issue is whether the defendants retaliated

13

against the plaintiff for his exercise of his constitutionally-protected rights.

There are genuine factual issues as to whether the defendants' conduct violated the plaintiff's clearly established constitutional rights.  It was a constitutional violation if the defendants transferred the plaintiff away from his medically prescribed, single, wet cell in retaliation for filing lawsuits.  Under the circumstances as alleged, it was clearly established that the defendants' actions, if retaliatory, were unlawful when they were taken.  Therefore, the defendants are not entitled to qualified immunity on the plaintiff's retaliation claim.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment on qualified immunity (DE 113) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion to substitute exhibits (DE 114) is **GRANTED**, the plaintiff having objected but not on proper grounds.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file a surreply and affidavit (DE 125) is **GRANTED**, the defendants having no objection.

**IT IS FURTHER ORDERED** that the plaintiff's motion for the court to make a pretrial judicial ruling (DE 129) is **DENIED**, and the plaintiff's motion for pre-trial conference to settle dispute between parties concerning claims within complaint (DE 133) is **DENIED**, the court having resolved the issues presented in the motions.

**IT IS FURTHER ORDERED** that the defendants' motion for extension of time

to file a response to the plaintiff's motion for a pretrial ruling (DE 130) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for pending motions to be submitted to chambers (DE 134) is **DENIED** as moot, the court having ruled on all pending motions.

Signed on September 30, 2008

**Jennifer B. Coffman, Judge**
**United States District Court**

15